# CHARLESTON.

### JOHNSON *v.* MANN.

Submitted January 25, 1899—Decided April 8, 1899.

VENDOR'S LIEN—*Enforcement—Exchange of Property—Decree.*

    T. J. and A. E. J. jointly exchanged farms with M., taking M.'s land at an estimated price of seventeen thousand one hundred and fifty dollars, to be regulated by survey as to number of acres, and taking M.'s bond for two thousands eight hundred dollars, five thousand dollars, and seven thousand dollars difference, reserving a lien therefor on the lands conveyed by them to M. The sale to M. at the price named thirty-two thousand five hundred dollars, was conditioned on M. making sale of same at that price within a few days to C. The seven thousand dollars bond was turned over to T. J. for his interest in the lands conveyed, and secured by said vendor's lien. M. failed to make the sale to C. Another contract was entered into between A. E. J. and M., with which T. J. had nothing to do, whereby the two thousand eight hundred dollars and five thousand dollars bonds were returned to M., and A. E. J. was to pay M. two thousand dollars, difference between his land and M.'s, which was conveyed to A. E. J., and gave to M. his bond for two thousand dollars, which M. assigned to T. J., to apply as a credit on the seven thousand dollar bond held by T. J. Said last contract says nothing about a survey of M.'s land to ascertain the acreage. T. J. brought his suit against M. to enforce his vendor's lien. M. filed his answer in the nature of a cross bill, and prayed that T. J. be required to amend his bill, making A. E. J. a party thereto, and that he be required to answer his cross bill, and that the differences between M. and A. E. J. be adjudicated therein, and thus effect the claim of T. J. The bill was so amended by order of the court. A. E. J. answered. Depositions were taken, and at the hearing decree was rendered, enforcing the lein of T. J., and the court went further, and ascertained that, by the payment of said bond of two thousand dollars, the said A. E J. had overpaid M. by the sum of eight hundred and ninety-six dollars, and dismissed defendant's cross bill. *Held*, the court erred only in ascertaining that A. E. J. had overpaid, contrary to his own contention that he was to pay the two thousand dollars difference between lands transferred, without any reference to surveys to ascertain the number of acres. (p. 293.)

Appeal from Circuit Court, Monroe County.

Bill by Thomas Johnson against James Mann and an-

other.    Decree for plaintiff, and defendant Mann appeals.

*Reversed.*

JOHN W. HARRIS, for appellant.

JOHN OSBORNE, for appellee.

McWHORTER, JUDGE:

By deed of date October 23 1891, Thomas Johnson and A. Emerson Johnson and Cora H., his wife, conveyed to James Mann, in consideration of thirty-two thousand five hundred dollars, of which the receipt of seventeen thousand one hundred and fifty dollars was ackuowledged, and the residue, fifteen thousand three hundred and fifty dollars, was to be paid in the bonds numbered respectively 1, 2, and 3,—the first, for one thousand three hundred and fifty dollars at thirty days, the others at one and two years, respectively, with interest from date of deed, and a vendor's lien reserved on the property conveyed to secure same; amount of the several bonds 2 and 3, for the residue, fourteen thousand dollars, not mentioned in the deed.   The deed conveys four tracts of land, in Monroe and Summers Counties, on the waters of Greenbrier river, and at the mouth of Wolfe creek,—the first tract, except about fifteen acres, to cover the house, yard, garden, barn lot, orchard, pond lot, and scales lots reserved to the separate use of said Thomas, and the title to the same in fee simple to him, and his heirs and his assigns, being the whole tract, of which the one undivided one-half interest was conveyed by said Thomas and wife to said A. Emerson by deed dated December 17, 1885, and containing three hundred and seventy-five acres; the second tract, part of the "Lane Farm," being that portion lying between the river and the Chesapeake & Ohio Railroad, and running as far up the river as Mohler's Mill, and containing forty-four acres; the third tract, known as the "John Alderson's Island," containing about fifteen acres. The fourth and last tract is the same conveyed by Enos Reynolds and his wife to said A. Emerson Johnson by deed of 29th December, 1886, containing eighteen and one-half acres, making an aggregate of about four hundred and thirty-seven and one-half acres conveyed by said deed, with general warranty.   On the same date, October 23, 1891, James Mann and Elizabeth N., his wife, conveyed to said

A. Emerson Johnson, in consideration mentioned in the deed and stated hereinafter, three tracts of land, lying in the counties of Greenbrier and Monroe, all of said tracts to be surveyed, and the prices per acre of each tract separately, and the said surveys, with their courses, to be a part of the deed,—the first tract, lying in Greenbrier County, known as the "Old Home Place," at twenty-five dollars per acre, and with said tract they also conveyed a certain lot or b dy of timber, and all privileges thereto, as reserved by deed of conveyance of December 1, 1887, made by parties of first part to Wellington Johnson; the second tract, also situate in Greenbrier County, on the east side of Flat Top Mountain, and known as the "Mountain Tract," at fourteen dollars per acre; the third tract, lying in Monroe County, on Bickett's Knob, and known as the "Wellington Johnston place," and adjoining the lands of John Skaggs, Harry Lemons, Widow Ellis, and others, and containing, by a second survey, two hundred and eighty-six acres, and taken, without further survey, at twenty-five dollars per acre, with general warranty.

At the August rules, 1894, Thomas Johnson filed his bill in equity against James Mann, in the circuit court of Monroe County, alleging: The conveyance by plaintiff and his son, A. E. Johnson, to Mann, of certain real estate they owned in Monroe County, conditioned upon Mann closing out a certain trade he had in view with other parties. That they were to get for said real estate thirty-two thousand five hundred dollars, to be paid as follows: They were to allow Mann a certain price per acre for the tracts of land owned by him,—two tracts in Greenbrier and one in Monroe County,—the residue of the purchase money to be paid in money. That for the deferred payments Mann executed his notes, payable to A. E. Johnson or order, showing on their face they were given for land sold by A. E. and Thomas Johnson, and were for $———, respectively. That within a short time Mann ascertained that he could not carry out the trade in view, and then made another contract with A. E. Johnson, by and with the consent of plaintiff, by the terms of which last contract plaintiff was to get seven thousand dollars for his interest in the lands sold to Mann. A. E. Johnson was to pay Mann two thousand dollars. the difference between his interest in the said

lands and the three tracts aforesaid, and, as Mann had already recorded the deed under the first contract, one of the notes executed by Mann to A. E. Johnson, and secured by vendor's lien in said deed, was turned over to plaintiff in payment for his interest in said lands, which note is filed as an exhibit with the bill, is dated October 23, 1891, and reads as follows: "Alderson, Oct. 23, 1891. $7,000. Two years after date, I promise to pay to A. E. Johnson or order $7,000, it being the third and last payment on lands transferred by T. and A. E. Johnson, and for which a vendor's lien is retained as in deed, and to bear interest as per date of deed. (Signed) James Mann. (Seal.)" That said A. E. Johnson executed his writing obligatory to said Mann for the difference between lands so expressed on its face, and paid the sum when it fell due. That, under the terms of the first contract, the said James Mann lands were to be surveyed, and were to be a credit, at certain values on the thirty-two thousand and five hundred dollars, but, under the new contract evidenced by the writing obligatory of A. E. Johnson to Mann, a gross sum was agreed upon between A. E. Johnson and Mann for the interest of A. E. Johnson in the lands conveyed. He also exhibited the deed. That the second agreement with James Mann was made November 25, 1891, and the bond of A. E. Johnson to Mann, for the difference agreed upon, originally bore this date, but was corrected by mutual consent, so as to make all the papers of even date. He also files the said bond as Exhibit C, as follows: "Interest, $240. Alderson, W. Va., Oct. 25, 1891. Two years after date I promise to pay to James Mann or order two thousand dollars, with interest from date, it being difference between lands transferred. Given under my hand and seal. A. E. Johnson. (Seal),"— and indorsed: "I assign the within to Thomas Johnson, as assignee of Emerson Johnson, to stand as a credit on land note of ($7,000) seven thousand dollars, this 24th day of Oct., 1893, James Mann." He alleges that the seven thousand dollar note was for plaintiff's interest in the lands conveyed to Mann; that with the trade between Mann and A. E. Johnson plaintiff had no concern; that all the interest he had in it was to get from James Mann the seven thousand dollars for his interest; that no part of the lands was conveyed to

plaintiff; that notwithstanding the said new agreement, and notwithstanding plaintiff had no connection with the purchase of the James Mann lands by A. E. Johnson, the defendant Mann now seeks to avoid paying plaintiff for his interest by reason of a claim he sets up against A. E. Johnson, and wants to make plaintiff pay him a balance he claims to be due from A. E. Johnson on account of the purchase of his lands by A. E. Johnson, in which plaintiff was not known and had no part. He alleges that he has a right to the enforcement of his vendor's lien against the real estate conveyed by himself and A. E. Johnson for his note of seven thousand dollars, and prays for decree of sale to pay same, and for general relief.

Defendant Mann tendered and filed his answer to the bill, and says that in October, 1891, W. S., Thompson, acting agent for A. E. Johnson, represented to respondent that George H. Cameron, through his agent, W. Haskins, wanted to buy a certain farm in Monroe County, owned by plaintiff and his son, A. E. Johnson, and would give therefor the sum of thirty-two thousand, five hundred dollars. That A. E. Johnson was anxious to accept the offer, but his father was unwilling to sell, or that his son should sell, unless his son got land in return. That the son was unwilling to antagonize his father, and that he (Thompson) was authorized by A. E. Johnson to say to respondent that he would turn over the offer of thirty-two thousand, five hundred dollars to respondent, and accomplish the deal, by letting him take the farm at that price and take defendant's own land at a certain price (as set out in deeds), and for the difference respondent could execute his bonds to him, the said A. E. Johnson. That, as the result of his proposition and some further negotiations with A. E. Johnson in person, respondent agreed to take the farm from Johnson at said figures, but only on the express condition that the sale to Cameron should be closed at the same time for cash, and before any papers should pass between Johnson and respondent. That said Johnson agreed to take respondent's home place at twenty-five dollars per acre, another tract known as "Mann's Mountain Tract" at fourteen dollars per acre, and the third tract, lying in Monroe County, known as the

"Wellington Johnson Tract," containing two hundred and eighty-six acres, at twenty-five dollars per acre; the two former tracts being subject to survey, and the latter to be taken as containing two hundred and eighty-six acres, and respondent to execute his bonds to A. E. Johnson for the difference. The whole agreement, however, as far as respondent was concerned, was predicated upon the closing with Cameron on the terms aforesaid. The estimate was then made, subject to survey provided for, on respondent's land, at the prices and amount, assumed to be seventeen thousand, one hundred and fifty dollars, and on the 23d of October, 1891, the deeds were executed; and avers that to impress respondent with the good faith of the offer of Cameron through his agent, Haskins, and to inveigle respondent into the deal, as he afterwards ascertained, the said A. E. Johnson and his agent, Thompson, before the execution of the deed, exhibited to said respondent a draft drawn on said Cameron for one thousand dollars, and a certified check for another one thousand dollars, which they allege had been drawn to be paid on the Johnson land. That although respondent was deceived thereby, and by other representations made by the parties, into the belief that the negotiation was instituted and prosecuted in good faith, he refused to close the transaction or execute the bonds called for until the sales could be closed with Cameron, and, having been put off from time to time with this and that excuse for Cameron's nonappearance, respondent finally declared that he would have nothing more to do with the matter. That this is borne out by the fact that said Johnson, still insisting that Cameron would take the land at the figures named, on the 12th of November, 1891, entered into a contract in writing with F. N. Mann, a son of respondent, and filed a copy of said contract, as follows: "This article of agreement, made and entered into this the 12th day of Nov., 1891, between A. E. Johnson, party of the first part, and F. N. Mann, party of the second part, witnesseth: That the said party of the second part, by virtue of a sale of the party of the first part's farm to James Mann, takes upon himself the responsibility of paying a certain bond given by James Mann, by party of the first part, which said bond becomes the property of Thomas

Johnson, for the sum of $7,000; that is to say, that James Mann gives an option to W. Haskins, agent for Geo. H. Cameron, for the sale of the said farm that he, James Mann, bought from the said party of the first part, for the sum of $32,500, and that said option shall be closed in ten days or less time, as per this option, when this said bond of three thousand five hundred dollars, which said party of the first part has given to said party of the second part, shall be due and payable, twelve months from the day of this agreement, but, if said sale should not be made from James Mann to Geo. H. Cameron, the said bond of three thousand five hundred dollars given by the said party of the first part to the said party of the second shall be canceled. It is further agreed that the two thousand dollars advanced for the said option shall remain the property of the second part, unless the sale is completed fetween Geo. H. Cameron and James Mann, and then the said two thousand dollars shall go as payment to the said party of the first part on the purchase money due him from James Mann; and it is further agreed that the remaining purchase money due to the said party of the first part from James Mann, which is $7,800, payable in two bonds, to wit, $2,800, in thirty days, and the second for $5,000, to be paid in twelve months, shall be deposited in the Greenbrier Valley Bank, with this understanding that, if this said sale should be closed between James Mann and Geo. H. Cameron, then the said bonds shall be in full force and effect, but if said sale should not be completed inside of the time specified in said option from James Mann to W. Haskins, agent for Geo. H. Cameron, then the said bonds, numbering 1 and 2, respectively, shall be returned to James Mann. Witnesseth our hand and seals the day and year above written. A. E. Johnson. (Seal.) F. N. Mann. (Seal.)" "I hereby certify that this is a true copy. W. S. Thompson." That accordingly this contract was, on the day following its execution, exhibited to respondent, who executed to said A. E. Johnson his three bonds, of seven thousand dollars, two thousand eight hundred dollars, and five thousand dollars, respectively, and handed them over to F. N. Mann, together with the deed to Johnson, to be used in accordance with the terms of said contract, provided Johnson would indorse the check and draft aforesaid. Respondent aver-

red that he was informed, believed, and charged that Cameron was a man of straw. That the money on which the check of one thousand dollars was drawn was the money of A. E. Johnson. That Haskins had no funds in the hands of Cameron on which said draft was drawn, and that Cameron had no funds upon which he had authorized said draft to be drawn. That the said Johnson farm was worth only about twenty thousand dollars, and that the whole scheme was a fradulent device, concocted by A. E. Johnson, for the purpose of inducing the respondent to part with the title to his land, and execute to him his bonds to a large amount, when in fact there was little, if any, difference in the value of the tracts exchanged. That, on the day following the execution and delivery of the bond and deeds as aforesaid, plaintiff brought the seven thousand dollar bond, and asked respondent to change it so as to make it bear interest from the date of the deed, from which it was understood all the papers should run, but respondent refused to do so, because A. E. Johnson had not yet indorsed the draft and check, of one thousand dollars each, to F. N. Mann. Plaintiff said he would see the son, and have him do this, and left for that purpose, and soon returned, with the information that A. E. Johnson would indorse them. Respondent then made the change in the bond requested. That, a day or two before the expiration of the option, A. E. Johnson came to respondent, and insisted on taking up the draft and check, and finally respondent and F. N. Mann allowed him to take up the draft and check, and execute to him his bond therefor, which is the two thousand dollar bond mentioned in the bill, which was afterwards taken by plaintiff as a payment on the seven thousand dollar bond assigned to him. Respondent avers that the two thousand dollar bond was written by F. N. Mann at the dictation of A. E. Johnson. That respondent's attention was not called to the concluding clause, "being difference between lands transferred," as at the very time it was delivered it was agreed between respondent and Johnson that they should go on with the survey of the land, and that settlement should be made according to the result of said survey. That said bond was not accepted by respondent with the idea that it was a final settlement. That he never, by word or act, indicated that it was to

be so taken in final settlement of the difference in the value of land. That respondent is in no wise bound by the insertion of said clause, or because he received it with said clause therein. That the survey agreed to be made was in fact afterwards made by a party mutually chosen by them for the purpose, and that after it was made Johnson agreed with respondent to settle in accordance with said survey, except as to a part of the "Mountain Place" included therein, which said Johnson claimed did not belong to that place. That the claim now asserted in the bill was never made until after respondent had paid all that was due on the seven thousand dollar bond, and for the manifest reason that, if the two thousand dollar bond was for the difference between the lands transferred, it would have wiped out any obligation of respondent to pay anything on the seven thousand dollar bond; and respondent charges that this claim is altogether an afterthought of A. E. Johnson, and inserted in the bill at his suggestion and for his supposed benefit. That, at the time said two thousand dollar bond was executed, the two thousand eight hundred dollar and five thousand dolla. bonds executed by respondent were returned to him by A. E. Johnson. That the amount due respondent for his lands. as shown by the survey, copies of which are filed with the answer, was nineteen thousand five hundred and thirty-five dollars and eighty cents, instead of seventeen thousand one hundred and fifty dollars, as estimated in the deed; there being three hundred and seventy-four acres and two poles in the "Mountain Place," and two hundred and eighty-five acres and thirty-one poles in the "Home Place," making a difference of two thousand three hundred and sixty-five dollars and eighty cents, with interest from October 24, 1891, or two thousand six hundred and forty-nine dollars and sixty-nine cents at the maturity of said seven thousand dollar bond, which respondent is entitled to have credit for on said bond, on which there was due at maturity only two thousand five hundred and seventy-nine dollars and thirteen cents, after deducting other payments made by respondent, and admitted in the bill, and which sum of two thousand six hundred and forty-nine dollars and sixty-nine cents overpaid said bond by seventy dollars and fifty-six cents, which respondent was entitled to recover against plaintiff and A. E. John-

son, with interest from 24th of October, 1893, until paid. And respondent denied all allegations of the bill inconsistent with his answer. And respondent prays that plaintiff be required to amend his bill, and make A. E. Johnson a party thereto. That his answer be taken and read as a cross bill filed in the cause against plaintiff; and also against A. E. Johnson. That, unless plaintiff shall at once so amend his bill that the said A. E. Johnson be made a party defendant to this cross bill, process be awarded against him to answer the same. That said A. E. Johnson be required to produce and file in this cause the original of said contract between him and F. N. Mann. That, in the event the concluding phrase in said two thousand dollar bond can be construed as claimed in plaintiff's bill, the said plaintiff and A. E. Johnson be required to refund to respondent the sum of three thousand and twenty dollars and ninety-seven cents, the sum which respondent had, in that event, overpaid, in addition to the seventy dollars and fifty-six cents, on said seven thousand dollars and said land transaction, with interest thereon from October 24, 1893, until paid. That, if said phrase cannot be properly so construed, the respondent may be allowed his said offset of two thousand six hundred and forty-nine dollars and sixty-nine cents against said seven thousand dollar bond, and that said bond be declared to be discharged, and ordered to be surrendered to respondent, and a decree rendered against plaintiff and A. E. Johnson for the said overpayment of seventy dollars and fifty-six cents, with interest, and for general relief.

To which answer plaintiff replies generally, and the court directed plaintiff to amend his bill at rules, by making A. E. Johnson a party defendant thereto. Plaintiff filed his amended bill accordingly, setting out the exchange of lands as in the original bill, and the contract made between A. E. Johnson and F. N. Mann, a copy of which is filed with the answer of James Mann; alleging that, in that transaction, F. N. Mann was acting for his father, defendant Mann, and that, in making that contract, James Mann was getting a better trade for himself; for in the last contract he agreed to give only fourteen thousand eight hundred dollars difference in farms, and nothing said about surveying. He was also to get through F. N. Mann three thousand five

hundred dollars further reduction, making the difference agreed upon, if Cameron took the land, eleven thousand eight hundred dollars instead of fifteen thousand three hundred and fifty, as first agreed or estimated; the said F. N. Mann to have the two thousand dollars paid, or agreed to be paid, to Cameron's agent, for the option if, Cameron did not take the land, reducing the difference to nine thousand eight hundred dollars. He calls attention to the last-named contract as being a specific undertaking on the part of James Mann, through F. N. Mann, to pay plaintiff seven thousand dollars, and, if Cameron did not take the land, then the other bonds executed by James Mann to A. E. Johnson, for two thousand eight hundred dollars, and five thousand dollars, were to be returned to Mann, while the seven thousand dollar bond, according to the language of the contract, was the property of plaintiff, and not to be returned to Mann; that on the 16th day of November, 1891, three days after the contract with F. N. Mann, and seven days before the option given Cameron's agent had expired, defendant Mann had the deed from plaintiff and A. E. Johnson recorded, and, if A. E. Johnson had been so disposed, he could have held him to his first contract, evidenced by the deed he accepted and recorded, or by the latter contract, made with F. N. Mann. Instead of this, he made another contract with defendant Mann much more favorable to Mann than either of the others, and agreed to allow defendant two thousand dollars for difference in value of lands exchanged, and executed his bond therefor, which said bond shows on its face the consideration and the fact of its being executed, while James Mann's seven thousand dollar bond was out as the recognized property of plaintiff. Plaintiff alleged that defendant Mann included in the survey of the "Home Tract" two pieces of land, one of which he purchased from B. A. Curry after he sold to A. E. Johnson, and to the other he never did have any title, but same belonged to Stewart's heirs; that he included in the survey of the "Mountain Tract" another and an entirely different tract of land, which only joined said "Mountain Tract" at a point, and another piece, which he had bought since October 23, 1891, upon the condition that he could "put it off on Emerson Johnson at fourteen dollars per acre." And plaintiff insists that, from the facts stated by defendant

Mann in his answer to plaintiff's original bill, he ought not to be intermixed with the defendants in any differences they may have, but that defendant Mann, having plaintiff's interest in the three tracts of land under the deed from the plaintiff, should pay him therefor as agreed. That he received no part of the land conveyed by Mann, was never paid in that way, but was to be paid in money; and prays that the land conveyed by plaintiff and A. E. Johnson to Mann be sold to pay the claim of plaintiff, as set out in original bill, etc.

Defendant A. E. Johnson filed his answer, admitting that in the main the allegations of plaintiff's original and amended bill are correct, and, except as modified by his answer, are expressly admitted. That after the negotiations for the sale of the Johnson lands to Mann for the thirty-two thousand five hundred dollars had come to an end, as respondent supposed, not having heard of the matter for some time, respondent was passing the place of business of F. N. Mann, the son and general agent of defendant Mann, when F. N. Mann hailed him, and asked him if he had heard anything from Cameron. Respondent told him, "No," and that he guessed the whole thing was dead. That, in a day or so after this conversation, Thompson, in company with defendant James Mann, came to respondent, and they, with respondent's father, talked over the matter. That respondent told Mann the nature of his agreement with his father. That, in the event of a sale, his father was to get seven thousand dollars of the purchase money in addition to the fifteen acres reserved in the deed, and his father then and there told Mann that, unless the trade was consummated at that time, he would have nothing more to do with it. That at that time respondent offered to take from Mann seven thousand dollars, difference between Mann's land and the Wolfe Creek land, but no arrangements were completed that night. The next day Haskins came to respondent's home. They made an appointment to meet at the Alderson House. Respondent went to the room designated, and found Haskins out, and F. N. Mann and W. S. Thompson in the room. Respondent waited some time, but, Haskins not coming, respondent went home. This was November 10, 1891. That he heard no more of the matter until the 12th of November, when

Thompson brought him the contract filed, with the answer of Mann, which respondent, after much hesitation, signed, as it was virtually the offer that he had made James Mann three days before, making the difference between the farms seven thousand dollars, in the event Cameron did not take it. On the 16th of November, respondent met James Mann, as Mann was on his way to Union. Asked him the result of the Thompson and Haskins meeting. He said everything was all right, and that day he had the deed from the respondent and his father recorded. On the 21st respondent went to Alderson, as he promised, and saw James Mann and F. N. Mann, and told Mr. Mann that he could give back the deed, and respondent would give him his, and that would end the matter. He then learned that Mann had recorded the deed nearly a week before, and could not return it without respondent's father would agree. Respondent then proposed to exchange lands with James Mann, he to pay the respondent's father the seven thousand dollar note already turned over to him, and which the agreement with F. N. Mann recognized as his property, and respondent to pay two thousand dollars difference between lands, and the Manns to turn over check and draft to respondent. James Mann said he would think the matter over. James Mann turned to Frank, and said, "That would leave us just $5,000 to pay." Frank said, "Not if the 'Mountain Land' overruns." Mr. Mann said, "Yes, but the 'Home Place' will not hold out." Respondent then said: "You take our farm, and pay pa $7,000. Turn over checks and drafts to me, and I take your three farms, and pay you two thousand dollars. Leave everything just as it is. I want the land run off to get the courses, but it does not matter about the number of acres, if it does fall short, and we will fix it up right now, that there be no more trouble about it." Mr. Mann said: "Well, I guess that is about right; you and Frank fix it up. I want to go to church." "He walked out. Frank pushed some paper to me, and told me to write the bond. I told him to write it; I would sign it. He asked me how to write it. I told him to write it so it would show exactly what it was for. He then wrote it without any further suggestion from me, except as to the date. He had dated it November 21, 1891. I told him, to be exactly right, it should have been the same as the note given for $7,000,

and he changed it." He denies that he exhibited to Mann a
check for one thousand dollars, or any draft for one thous-
and dollars, or check and draft for any amount. That he
knew nothing of their being left by Haskins until Frank
Mann sent Thompson to him with the contract, dated No-
vember 12, 1891. That, so far from respondent seeking the
Manns for the trade, they were continually after him. That
he was averse to trading with James Mann, because of pre-
vious difficulty with him. That respondent, in all the trans-
action, acted in entire good faith. That James Mann was
not deceived. That respondent went to James Mann, and,
in the presence of Mr. Jeffries (the surveyor), told him that
his contract was to pay Mann two thousand dollars, in dif-
ference between lands, Mann to pay Thomas Johnson seven
thousand dollars, and a survey was to be made, but only
to show courses, etc., but not for the purpose of ascertain-
ing prices; to which Mann replied that respondent had said
something of that sort at the time the two thousand dollar
note was executed, but he (Mann) did not understand it that
way. That Mann also admitted that he had told Jeffries
that, if respondent made much of a kick against the
ten acres added to the "Home Place," it would have to
come out. Respondent says he should not be required to
take any land from Mann that he did not own at the time
the contract of Ocotber, 1891, was made, nor any other than
the three tracts therein set out. That Mann had already
sold the fifty-acre tract that he was trying to force on re-
spondent to Isaac Forren for one hundred dollars, and he
was in possession of it at the time of the contract with
Mann, and that the forty-acre tract was only a conditional
purchase. That the attempt to charge respondent with
additional difference was an afterthought of said Mann.
That Mann was trying to put one hundred and fifty dollars'
worth of land upon respondent that he did not own at the
time of the contract of October, 1891, and a large part of
which he does not now own; and denies each and every alle-
gation in the answer and cross bill of Mann not expressly
admitted in his answer, and asks that the contract, as evi-
denced by the two thousand dollar bond between Mann and
himself, be enforced; that Mann be not allowed to play fast
and loose with the contract, as might suit him; that if,
upon a fair construction of the contract between Mann and

respondent, the "Mountain Tract" and "Home Place" are to be surveyed to respondent in order to fix the price, Mann`be confined to the land he owned at the time of the contract, and set out in the contract, and not be permitted to survey to respondent lands not contemplated in the contract,—lands that he only holds conditionally, and which by no fair dealing respond-, ent could be asked or required to take.

Defendant Mann filed his answer to said amended bill, to which plaintiff replies generally, and defendant Mann replied generally to the answer to his cross bill. Defendant, in his answer to plaintiff's amended bill, refers to his answer to the original bill, which he asks to be read as a part of this answer, and denies all allegation of amended bill inconsistent with his original answer. Denies that he ever executed said bond of seven thousand dollars to any other person, for any other purpose, in any other manner, or under any other undertakings or agreements, than such as are stated in said answer, or that he had any other dealing with said Thomas Johnson in relation thereto, except as stated in said answer. Denied that he ever contracted to convey to A. E. Johnson any land, except as stated in said answer; and that all the land which he contracted to convey to him he had full power and authority to convey, and that he had never attempted to put off any land upon him, except in a legitimate way, by fair and just methods, and in accordance to contract. That he had never had any contract or understanding with said Thomas Johnson or A. E. Johnson in relation to the subject of this controversy, except as heretofore stated, and that, so far as said contract remained unexecuted, he was ready and willing to execute it. To which answer Thomas Johnson filed his special replication that the seven thousand dollar bond on Mann was turned over to the replicant in payment of his interest in the land transferred to Mann by himself and A. E. Johnson. That, at the time the negotiations were pending, it was clearly understood by all parties that replicant asked seven thousand dollars for his interest in said land, and that, unless said amount was paid him, he would not convey his interest. That before the deal was closed said bond was turned over to him, and he made Mann add to it that

it was to bear interest from the date of the deed. That this exclusive ownership of the seven thousand dollar obligation alleged in the bill is not controverted or denied in the answer. That in his bill he alleges that with the exchange of A. E. Johnson of his interest in the lands with James Mann he had nothing to do, and was in no wise interested. That he got no part of the consideration for the exchange, and this fact is in no wise controverted or denied in the answer. That his said son, A. E. Johnson, is fully solvent, and able to meet any obligations he may have contracted with defendant Mann, and denies the right of Mann to have litigated in this suit any matters in difference between himself and A. E. Johnson. That Mann does not in his answer accuse replicant of false dealing with him, and does not deny that his interest was worth, as in the bill alleged, seven thousand dollars, but, because he esteems himself overreached in the exchange of land with A. E. Johnson, now seeks to delay replicant in the collection of what is justly his. That Mann had recorded the deed made by himself and A. E. Johnson before the two thousand dollar note was executed, and that it was executed in pursuance of the bargain between Mann and A. E. Johnson and was made long after Mann had abandoned hope of selling to his "man of straw," Cameron, and was made after the original contract with Mann had been abandoned, and is the evidence of a new contract. That replicant did not pay this note for A. E. Johnson, but paid it, and took an assignment from Mann, as appeared by the note itself. If replicant's contention that he was to get seven thousand dollars for his interest is not correct, there would have been no necessity for the two thousand dollar note; for, instead of executing a note for seven thousand dollars, it would have been made for five thousand dollars. That every paper filed in the case bears out the replicant's contention, and refutes the pretensions of Mann. That W. S. Thompson was never his agent or his son's, but was simply employed by Mann and A. E. Johnson to draw the deed and contract between them. And prays that he may not be required to wait the determination of matters in which he has no interest; that, if A. E. Johnson be indebted to Mann in any way, they be required

to adjust their matters and differences between themselves, and that he have the relief prayed for in his bill.

Depositions were taken and filed in the cause for and on behalf of the Johnsons and Mann. On the 11th day of June, 1896, the cause came on to be heard upon the motion made by Mann to exclude the deposition of G. W. Ballard, taken on the 21st of March, 1896, and on the affidavit in support of and against said motion and arguments of counsel. when leave was granted to defendant Mann, at any time within forty days from the rising of the court, to cross examine said witness Ballard upon the matter about which he testified, and to take within the same period any evidence in rebuttal of said Ballard's testimony that Mann might desire to take; and on the 12th day of October, 1897, the cause was heard upon the original and amended bills; the exhibits filed therewith; the answers of James Mann to said bills; the answer of A. E. Johnson to the amended bills filed by leave of the court, with general replications to said answer; the orders entered in the cause; the depositions of sundry witnesses offered in behalf of plaintiff and defendants; the exceptions to the depositions taken by plaintiff on the 4th day of March, 1895, the 19th day of September, 1895, the 30th day of September, 1895, the 29th day of February, 1896, and the deposition of G. W. Ballard, taken March 21, 1896; the exhibits filed with said deposition; and upon arguments of counsel; and the court sustained the exception to the depositions taken March 4, 1896, and February 29, 1896, and overruled the exceptions to the other depositions, and ascertained and decreed that the seven thousand dollars with interest from October 23, 1891, was due to plaintiff, Thomas Johnson, from James Mann. who was not entitled to any abatement or set-off against the same. other than the credit indorsed on the bond, and ascertained a balance due on said bond of three thousand one hundred and ninety-seven dollars and ninety-six cents as of October 23, 1897, and decreed the same to the executor of Thomas Johnson, with costs, except the costs of depositions excluded, and that said sum was a vendor's lien upon the real estate conveyed by Thomas and A. E. Johnson to Mann, and decreed a sale thereof to pay the same; and the court proceeds further to decree as follows: And it further appearing to the court that the defendant

A. E. Johmnson bought of the defendant James Mann three tracts of land, viz. the "Wellington Johnson Tract," of two hundred and eighty-six acres, at twenty-five dollars per acre, and the "Home Place" at twenty-five dollars per acre, —and the "Mountain Tract" at fourteen dollars per acre,— at an estimated price seventeen thousand one hundred and fifty dollars, which was to be regulated by a survey to be made of the "Home Place" and the "Mountain Tract," and the "Wellington Johnson Place" was to be taken at the sum of seven thousand one hundred and fifty dollars; that by said survey the "Home Place" was found to contain two hundred and eighty-five acres and thirty-one poles, and amounts to seven thousand one hundred and thirty dollars; and that the true amount of the "Mountain Tract," as ascertained and fixed by the court, is two hundred and eighty-three acres and one hundred and thirty-nine poles, and that no part of the "Massie Tract," of fifty acres, and the James Forren forty acres, should be included in said survey (it being shown to the satisfaction of the court that they are separate and distinct tracts of land, and not parts of the "Mountain Place"); and that, at the price of fourteen dollars per acre, it amounts to three thousand nine hundred and seventy-four dollars, which said three sums aggregate eighteen thousand two hundred and fifty-four dollars, or an excess over the estimated value of the sum of one thousand one hundred and four dollars; and it further appearing tc the court that the defendant A. E. Johnson has already paid to the defendant James Mann the sum of two thousand dollars, as a difference between the land exchanged, and that this two thousand dollars was eight hundred and ninety-six dollars more than James Mann was entitled to receive; and the court being further of the opinion that the two thousand dollar bond expresses its consideration on its face, and that it was not given in lieu of the check and sight draft given by W. Haskins, agent for George H. Cameron, to James Mann, for an option on his land, and that the defendant James Mann is not entitled to any relief against the defendant A. E. Johnson, as prayed for in his answer and cross bill,—this cause is dismissed as to said defendant A. E. Johnson, with his costs against said James Mann; from which decree defendant Mann appealed to this Court.

This was a suit brought by Thomas Johnson to enforce his vendor's lien for what remained unpaid on the seven thousand dollar bond which was turned over to him as and for his interest in the lands conveyed by him and A. E. Johnson to defendant Mann. The defendant filed his answer, asserting that A. E. Johnson should be impleaded also, and that transactions between him and defendant should be brought in, and amounts found to be due from said A. E. Johuson to him should be offset against said seven thousand dollars. It clearly appears from the evidence that, before the exchange of land was consummated, Mann knew what the interest of Thomas Johnson was; that he was to have the seven thousand dollar bond for his interest. In his deposition, Mann himself, in his testimony, says that on the evening of November 8 or 9, 1891, at A. E. Johnson's house, Thomas Johnson said: "If this business is going to be closed up, it must be done to-night or not at all." A. E. Johnson testifies that on that evening he showed Mr. Mann the deed from his father to him, and told him the conditions of the contract that he had with his father, and also told him of the agreement between them, whereby his father was to get the reservation in the deed and seven thousand dollars, that Mr. Mann remarked that "I think your father will make more out of the sale than you will." Mann also says in his deposition that in October, 1891, Thompson, as agent of A. E. Johnson, showed him a letter from Haskins, agent of Cameron, which contained an offer of thirty-two thousand five hundred dollars for the Johnson place, mouth of Wolfe creek; that said letter asked for ten days' option, and an offer of one thousand dollars for the same; and that Thompson said that Thomas Johnson would not sign a deed unless his son, A. E. Johnson, got real estate in exchange for the same, and they wanted him (Mann) to close the trade with Cameron and give the option and take his (Mann's) bonds for the property. Said Mann also adopted the contract made between A. E. Johnson and Frank N. Mann as his own. Frank, in that transaction, acting for his father, and Mann insists that he made the contract at the thirty-two thousand five hundred dollars for the Johnson land only and solely on condition that the sale should be consummated to Cameron, and,

when it was found that it would probably fail, the contract of November 12, 1891, between A. E. Johnson and Frank N. Mann, was entered into, a copy of which is filed with Mann's answer, which was a conditional contract. James Mann was to give an option to Haskins, agent of Cameron, on the Johnson land, which he had bought at thirty-two thousand five hundred dollars. Said option should be closed in ten days or less time. In case the sale was made to Cameron, a bond of three thousand five hundred dollars, given by A. E. Johnson, was to be due and payable to Frank N. Mann in twelve months from that date. In case the sale was not made to Cameron, the three thousand five hundred dollar bond was to be canceled, but the two thousand dollars advanced for the option was to remain the property of the said Frank N. Mann, but, if sale was made, the two thousand dollars was to go as a payment to A. E. Johnson on the purchase money due from Mann; and two other bonds of two thousand eight hundred dollars at thirty days, and five thousand dollars at twelve months, if the sale was made to Cameron, were to be in full force and effect, and, if the sale was not made, to be returned to James Mann. The sale was not made, and the two notes were accordingly returned, leaving the seven thousand dollars alone constituting a vendor's lien, and which was the property of Thomas Johnson, for the enforcement of which lien this suit is brought. Thomas Johnson had no interest whatever in any differences or disputes between defendant James Mann and A. E. Johnson, and A. E. Johnson was improperly made a party to the suit. The decree for the plaintiff for the residue of his purchase money was proper, and the court did not err in dismissing defendant Mann's cross bill at his costs; but before the court dismissed the said cross bill it proceeded to adjudicate the rights of the parties under it and the answers thereto, adopting the theory of the defendant A. E. Johnson as to contract of November 12, 1891, as being that under which the settlement should be made between him and the defendant Mann. Yet while A. E. Johnson contends in his answer that, under said contract, he was to take Mann's land without survey, and pay him two thousand dollars difference, and gave his note therefor, the court says, and so decides, that Johnson, in paying Mann the two

thousand dollars, overpaid him by the sum of eight hundred and ninety-six dollars; thus giving A. E. Johnson eight hundred and ninety-six dollars which he did not claim. The depositions excepted to, and the overruling of which was assigned as error, related to the matters in difference between the defendant Mann and A. E. Johnson, under the cross bill and answer and replication, and are immaterial. The decree ascertaining the amount due plaintiff on his vendor's lien, and decreeing the sale of property to satisfy it, and dismissing the cross bill of Mann, is affirmed, and, in so far as it adjudicates the difference between the defendant Mann and A. E. Johnson, and ascertains that Johnson has overpaid Mann by the sum of eight hundred and ninety-six dollars, the same is reversed, and cause remanded. The said A. E. Johnson, having substantially prevailed, should recover his costs of this appeal.

*Reversed.*